# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LBH Engineers, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>Archer Western Contractors, LLC,<br>Archer Western Construction, LLC,<br>Hubbard Construction Company,<br>Northwest Express Roadbuilders,<br>Parsons Corporation,<br>Parsons Transportation Group Inc.,<br>Heath & Lineback Engineers, Inc.,<br>Georgia Department of Transportation,<br>and State Road and Tollway Authority.<br><br>     Defendants. | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT
## FOR PATENT INFRINGEMENT

Plaintiff LBH Engineers, LLC ("LBH") files this Complaint against Archer

Western Contractors, LLC, Archer Western Construction, LLC, Hubbard

Construction Company, Northwest Express Roadbuilders, Parsons Corporation,

Parsons Transportation Group Inc., Heath & Lineback Engineers, Inc., Georgia

Department of Transportation, and State Road and Tollway Authority (collectively,

the "Defendants") for infringement of U.S. Patent No. 8,578,537 ("the '537 Patent").  Attached as Exhibit A is a true and correct copy of the '537 patent.

## THE PARTIES

1.     LBH is a Texas limited liability company with its principal place of business in Grapevine, Texas.

2.     Archer Western Contractors, LLC ("AW Contractors") is a limited liability company existing under the laws of the state of Delaware.  AW Contractors is a wholly owned subsidiary of The Walsh Group, Ltd.  The corporate headquarters of AW Contractors is located at 2410 Paces Ferry Road, Suite 600, Atlanta, Georgia 30339.  AW Contractors does business in the State of Georgia and in the Northern District of Georgia and may be served with process via Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

3.     Archer Western Construction, LLC ("AW Construction").  AW Construction is a wholly owned subsidiary of The Walsh Group, Ltd.  The corporate headquarters of AW Construction is located at 2410 Paces Ferry Road, Suite 600, Atlanta, Georgia 30339.  AW Construction does business in the State of Georgia and in the Northern District of Georgia and may be served with process

via Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

4.     AW Contractors and AW Construction are referred to collectively in this Complaint as "Archer Western."

5.     Hubbard Construction Company ("Hubbard") is a corporation formed under the laws of the state of Florida.  Hubbard does business in the State of Georgia and in the Northern District of Georgia.  It operated at 881 Franklin Road, Suite 405, Marietta, Georgia 30067 during the term of the construction project that is the subject of this lawsuit.  Hubbard may be served with process via Corporate Creations Network Inc. at 2985 Parkway, 1st Floor, Marietta, Georgia 30066.

6.     Northwest Express Roadbuilders ("NWER") was, and on information and belief remains, a joint venture comprising AW Contractors and/or Archer Western, on the one hand, and Hubbard, on the other hand, with AW Contractors and/or Archer Western owning a controlling interest.  NWER's principal place of business was, and remains, 881 Franklin Road, Suite 405, Marietta, Georgia 30067.  NWER has done, and does, business in the State of Georgia and in the Northern District of Georgia.  NWER was formed for purposes of the specific construction project made the subject of this lawsuit.  NWER may be served with process through Archer Western's registered agent, Corporation Service Company,

3

at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092 and/or through NWER's registered agent, Katherine Barton, at 2004 Creek Pointe Way, Villa Rica, Georgia 30180.

7.      Parsons Corporation is a corporation existing under the laws of the state of Delaware.  Parsons Corporation has an office for itself and various subsidiaries at 3577 Parkway Lane, Building 5, Suite 100, Peachtree Corners, Georgia 30092.  Parsons Corporation does business in the State of Georgia and in the Northern District of Georgia and may be served with process through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

8.      Parsons Transportation Group Inc. ("PTG") is a corporation existing under the laws of the state of Illinois.  PTG is a wholly owned subsidiary of Parsons Corporation.  PTG has an office at 3577 Parkway Lane, Building 5, Suite 100, Peachtree Corners, Georgia 30092.  PTG does business in the State of Georgia and in the Northern District of Georgia and may be served with process via CT Corporation System at 289 S. Culver St., Lawrenceville, Georgia 30046.

9.      Parsons Corporation and PTG are referred to collectively in this Complaint as "Parsons."

4

10.     Heath & Lineback Engineers, Inc. ("Heath & Lineback") is a corporation existing under the laws of the state of Georgia.  Heath & Lineback is headquartered at 2390 Canton Road, Building 200, Marietta, Georgia 30066. Heath & Lineback does business in the State of Georgia and in the Northern District of Georgia and may be served with process through its registered agent, John Alan Heath, at 2390 Canton Road, Building 200, Marietta, GA 30066.

11.     The Georgia Department of Transportation ("GDOT") is an entity of the State of Georgia.  GDOT is located at One Georgia Center, 600 West Peachtree Street NW, Atlanta, Georgia 30308.  GDOT does business in the State of Georgia and in the Northern District of Georgia and may be served with process through its Commissioner, Russell R. McMurry, at One Georgia Center, 600 West Peachtree Street NW, 23rd Floor, Atlanta, Georgia 30308.

12.     The State Road and Tollway Authority ("SRTA") is a state-level, independent public corporation created by the Georgia General Assembly to operate tolled transportation facilities within the State of Georgia and act as the State's transportation financing arm.  SRTA is located at 245 Peachtree Center Ave., NE, Suite 2200, Atlanta, Georgia 30303.  SRTA does business in the State of Georgia and in the Northern District of Georgia and may be served with process

through its Executive Director, Christopher Tomlinson, at 245 Peachtree Center Ave., NE, Suite 2200, Atlanta, Georgia 30303.

## JURISDICTION AND VENUE

13.     This lawsuit arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

14.     This Court has subject matter jurisdiction over LBH's patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).  On information and belief, each Defendant has committed acts of infringement in this judicial district and has regular and established places of business in this judicial district.

16.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process, due at least to their substantial business in this State and judicial district, including: (a) at least part of their infringing activities alleged herein; and (b) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to the State of Georgia and Georgia residents.

# BACKGROUND

## THE TECHNOLOGY AND ITS BENEFITS

17.     Matthew Tyler Ley, Ph.D. is the sole inventor of the '537 patent.

18.     Dr. Ley is an accomplished Professor of Structural Engineering at Oklahoma State University and a named inventor of multiple patents.

19.     Dr. Ley is an expert and pioneer in the fields of structural and concrete materials engineering.  Dr. Ley's biographical data is accessible at https://cive.okstate.edu/node/103 and http://www.tylerley.com/.

20.     Dr. Ley invented revolutionary technology related to concrete beams used in the construction industry, including those deployed in roadway bridge and overpass construction.  Among other things, Dr. Ley recognized that concrete beams for roadway bridges and overpasses, which can weigh over 400 tons, can be manufactured in phases resulting in numerous advantages over conventional approaches.

21.     From a technical standpoint, Dr. Ley's revolutionary technology involves constructing a precast structural concrete portion of a concrete beam that is sufficiently strong to support its own weight, and then placing it onto one or more set-in-place columns (the "one or more columns").  After the precast structural concrete portion is placed onto the one or more columns, fresh concrete

is poured on the precast structural concrete portion utilizing temporary formwork (the "poured-in-place structural concrete portion" or "poured-in-place portion"), where the precast structural concrete portion is sufficiently strong to support the moment load produced by the fresh concrete.  Reinforcing material extending from the precast structural concrete portion into the poured-in-place portion is used, such that the precast structural portion and the poured-in-place portion form an integrated structural concrete beam in the shape of an inverted-T.

22.     Dr. Ley filed the subject patent application on December 30, 2005. Claim 2 was deemed allowable on March 29, 2013.  All claims were allowed in an Examiner interview on June 25, 2013 and memorialized in a written communication on July 9, 2013, resulting in formal issuance of the '537 patent on November 12, 2013.  Dr. Ley's partially precast concrete beam inventions are recited in claims 1-7 of the '537 patent (hereinafter, the "Partially Precast Concrete Beam Technology").

23.     The substantial significance of the Partially Precast Concrete Beam Technology is readily apparent.  Conventional construction of a 500-ton wholly precast concrete beam requires a crane capable of carrying a 500+ ton dead load. In contrast, Dr. Ley's precast structural concrete portion implemented as part of the Partially Precast Concrete Beam Technology is a fraction of the weight of the

wholly precast concrete beam.  Thus, placement of the precast structural concrete portion only requires a crane with, for instance, a 300-ton dead load capacity.

24.     Notably, a crane with a higher dead load capacity (e.g., 500+ ton) is substantially larger in size and inordinately more expensive to buy, lease, or operate than a crane requiring only a fraction of such dead load capacity.  A smaller crane with a 300-ton dead load capacity is nimbler and makes a smaller footprint in a construction area, particularly as opposed to a crane with a 500+ ton dead load capacity, and particularly in tight, topographically-challenged construction areas.

25.     Use of the Partially Precast Concrete Beam Technology also results in substantially reduced traffic flow disruptions and shorter construction windows. Indeed, traffic passing beneath an overpass being constructed needs to be interrupted for only a few hours (typically overnight) while a precast structural concrete portion is set in place atop one or more columns.  After the precast structural concrete portion is placed onto the one or more columns, no shoring or formwork extending below the precast structural concrete portion is necessary. This is because the precast structural concrete portion is sufficiently strong to support its own weight, as well as the moment load produced by pouring the fresh concrete of the poured-in-place portion.  The poured-in-place portion is formed

9

using the Partially Precast Concrete Beam Technology, such that traffic is allowed to move freely beneath the beam at a maximum clearance height.  Compare this to conventional approaches where construction of a concrete beam can result in traffic disruptions lasting days or even weeks. Such conventional approaches include utilizing massive formwork and shoring that extend substantially below the beam thus reducing the clearance height necessary for vehicles to pass below.  It follows that overhead expenses associated with construction staff, shoring, formwork, and the like, for each concrete beam, is significantly higher than those same expenses associated with the Partially Precast Concrete Beam Technology.

26.     As further detailed below, owners of roadway bridge or overpass construction projects confronting challenging terrain and other environmental factors, budgetary concerns, and time constraints give significant consideration and weight to solutions incorporating the Partially Precast Concrete Beam Technology, and its attendant advantages, over conventional solutions incorporating only traditional construction methods.

**LBH ENGINEERS, LLC**

27.     As a junior engineer, Dr. Ley established a friendship with Ralph Browne (Dr. Ley's mentor at the time).  Mr. Browne has worked in highway construction and bridge design his entire career and considers Dr. Ley to be one of

the foremost experts in the field.  Once Dr. Ley filed his patent application directed

to his Partially Precast Concrete Beam Technology, Mr. Browne provided critical

financial assistance that allowed Dr. Ley to fund his patent prosecution through the

'537 patent's issuance.

28.     Mr. Browne also endorsed Dr. Ley and his prowess to his friend and

colleague, David Head.  Like Mr. Browne, Mr. Head has spent his entire career in

roadway bridge design and construction and recognized the value of Dr. Ley's

Partially Precast Concrete Beam Technology.  This prompted Mr. Head to join Mr.

Browne in providing Dr. Ley the aforementioned financial support.

29.     From that point forward, Dr. Ley, Mr. Browne, and Mr. Head became

business partners whose primary objective was the adoption and commercialization

of Dr. Ley's inventions, including the Partially Precast Concrete Beam

Technology.  Dr. Ley, Mr. Browne, and Mr. Head are now the constituent

members of LBH Engineers, LLC.

## THE BORDER HIGHWAY WEST PROJECT

30.     The remarkable story of indefensible actions taken by Archer

Western, Parsons, and NWER starts with the Border Highway West Project.  Just

months prior to issuance of the '537 patent, Mr. Browne and Mr. Head sought to

help Dr. Ley commercialize the Partially Precast Concrete Beam Technology.  Mr.

11

Browne and Mr. Head were working for a contractor involved in submitting a joint proposal on the so-called Border Highway West Project, a highway design and construction project in El Paso, Texas.  The joint proposal was spearheaded by two industry behemoths, Archer Western and Parsons.

31.     As part of this collaborative effort, Mr. Browne fully disclosed (in confidence) the design of the Partially Precast Concrete Beam Technology to a number of individuals from Archer Western (the prime contractor), Parsons, and Sundt Construction, Inc. ("Sundt") (collectively, "the Border Highway West Parties").  As one example, Mr. Browne prepared a PowerPoint presentation/pitch regarding implementation of the Partially Precast Concrete Beam Technology that he delivered, in-person, to the Border Highway West Parties.  A copy of the PowerPoint presentation (the "Border Highway West Presentation") disclosing the Partially Precast Concrete Beam Technology, and elucidating certain of its benefits, is attached to this Complaint as Exhibit B.

32.     Specifically, Mr. Browne (with supporting commentary from Mr. Head) delivered the presentation to, at least, Joe Lee, Kenny Crabb, Dustin McGrath, and Clayton Sorrells of Archer Western; Anthony Joseph Widacki, Chris Gilstrap, and William Dooley of Parsons; and Fred Stone and Shane Malkowski of

Sundt.  Mr. Browne subsequently emailed the Border Highway West Presentation

to, at least, Parsons' chief bridge engineer, Mr. Dooley, on July 15, 2013.

33.     The Border Highway West Presentation identified on the first slide

what would soon become the '537 patent by its U.S. Publication Number and made

clear that the patent claims had been allowed by the Patent Office.  In substance,

the Border Highway West Presentation included detailed schematics illustrating

precisely how to create the inventive precast concrete beam embodied in the patent

claims.

34.     Sundt reacted positively to the Border Highway West Presentation

and the possibility of including the technology in the bid for the Border Highway

West Project.  On the other hand, Archer Western and Parsons reacted negatively,

criticizing the Partially Precast Concrete Beam Technology as unproven.  Because

of their relative clout, Archer Western and Parsons carried the day, and the

Partially Precast Concrete Beam Technology was not included in bid documents.

The joint bid did not win the Border Highway West Project.

**THE NORTHWEST CORRIDOR EXPRESS LANES PROJECT**

35.     In 2013, GDOT and/or SRTA accepted proposals for a massive

tollway bridge design in the greater Atlanta, Georgia area referred to as the

Northwest Corridor Express Lanes (the "NWC Tollway").

36.     Archer Western and Hubbard formed NWER to serve as the prime contractor in pursuit of the NWC Tollway Project that included design and construction of approximately 40 bridges and 241 bridge columns.  NWER then formed a collaborative team of subcontractors including, but not limited to, Parsons, as lead designer for the NWC Tollway, and Heath & Lineback (collectively, the "NWC Tollway Parties").  Dr. Ley, Mr. Browne, and Mr. Head were neither included in, nor involved with, the bid team.

37.     GDOT and/or SRTA awarded the NWC Tollway Project to the NWC Tollway Parties on or around July 23, 2013.  *See* https://www.enr.com/articles/ 11998-georgia-picks-archer-western-hubbard-team-for-840m-p3-project.  The contract for the NWC Tollway was executed by NWER and GDOT and/or SRTA on or around November 2013.  On information and belief, the NWC Tollway Parties provided certain design concepts to GDOT and/or SRTA prior to being awarded the project, but the bulk of the project-specific design work was carried out subsequent to the award.

38.     The NWC Tollway was designed and constructed using Plaintiff LBH's Partially Precast Concrete Beam Technology at substantial cost savings to Defendants.  This is the same technology that was previously disclosed to Archer Western, Parsons, and NWER (via Archer Western).  The NWC Tollway Parties,

14

which includes NWER, were not authorized to use LBH's patented Partially

Precast Concrete Beam Technology.

39.     At least $110 million was saved on the construction of the NWC

Tollway by using "innovative designs and alternative technical concepts," which

include, in substantial part, the Partially Precast Concrete Beam Technology. *See*

https://www.parsons.com/2018/10/parsons-northwest-corridor-express-lanes-

project-no-1-roads-bridges-top-10-roads/.

40.     Indeed, the NWC Tollway Project was selected as the No. 1 project on

*Roads & Bridges* Top 10 Roads of 2018 list. *See id.* According to Parsons, "This

[NWC Tollway] project [] embodied the true spirit of design-build delivery at a

scale that has never been seen before in Georgia. The quality, schedule, and

financial performance on this project are setting the bar for future mega-design-

build project delivery within Georgia and around the country." *Id*.

41.     The NWC Tollway opened to traffic in September 2018 amid

substantial fanfare.  Attached as Exhibit C is an article written by a senior manager

from Parsons published in Aspire magazine in the spring of 2019.  The article lays

out details of the NWC Tollway.  Notably, pages 18 and 19 of the article—

beginning under the heading of "Precast, Post-Tensioned Straddle Bent Caps"—

disclose (among other things) schematics of the inventive Partially Precast

Concrete Beam Technology essentially lifted from the Border Highway West Presentation.

42.     The article is not only a notable admission of patent infringement, but serves as a brash public disclosure of the Partially Precast Concrete Beam Technology (without attribution to LBH, Dr. Ley, Mr. Browne, or Mr. Head) that may well encourage others in the industry to deploy the solution, or contact one or more Defendants to deploy the solution for a different project.

43.     The NWC Tollway ultimately won a number of prestigious industry awards, including for the best bridge with a main span of more than 150 feet. *See* Exhibit D, entitled "2019 PCI Design Awards."

44.     GDOT and/or SRTA estimate that approximately 16.9 million trips are taken using the NWC Tollway each year.

45.     GDOT and/or SRTA charge tolls to drivers using the NWC Tollway based on dynamic pricing, where drivers are charged more during periods of heavy traffic.

46.     Archer Western, Parsons, and NWER (and possibly other Defendants) knowingly and intentionally stole, made, offered for sale, sold, and used Plaintiff LBH's Partially Precast Concrete Beam Technology without any attempt to seek a

16

license from, or to compensate, LBH, Dr. Ley, Mr. Browne, or Mr. Head for its inclusion and deployment in the NWC Tollway Project.

47.    On information and belief, at least Archer Western and Parsons continue to offer to sell, sell, and implement the Partially Precast Concrete Beam Technology in active and prospective projects in knowing violation of Plaintiff LBH's rights.

48.    Among other things, Archer Western, Parsons, and NWER have been falsely recognized as pioneers in their industry resulting in substantial, unearned goodwill in the form of free press, prestigious awards, and other praise and accolades for the Partially Precast Concrete Beam Technology.  Archer Western, Parsons, and NWER have made no attempt to properly attribute the Partially Precast Concrete Beam Technology to Dr. Ley or LBH.

## SPECIFIC AWARDS AND RECOGNITION FOR THE NWC TOLLWAY

49.    Archer Western, Parsons, and NWER have accepted numerous awards, received substantial praise and recognition, and generated valuable goodwill stemming from their work on the NWC Tollway.  Such awards, accolades, and goodwill were made possible largely (if not entirely) on the strength of Plaintiff LBH's Partially Precast Concrete Beam Technology.

50.    The awards and recognition include, at least, the following:

- No. 1 project on *Roads & Bridges* Magazine's 2018 Top 10 Roads list

- Georgia Engineering Excellence Award Winner in Transportation

- Georgia Partnership for Transportation Quality Preconstruction Design Award Grand Prize Winner

- Precast Concrete Institute 2019 Design Award: Best Bridge with Main Span More Than 150 Feet

51.     The award for the *Roads & Bridges* #1 Road explicitly highlights the Partially Precast Concrete Beam Technology as integral to achieving such a lofty industry distinction:

> The largest transportation project in Georgia history, the Northwest Corridor Express Lanes project consisted of just under 30 miles of reversible tolled pavement along I-75 and I-575 in Cobb and Cherokee counties in metro Atlanta, where officials have been battling for traffic space for decades. The project also included the design of six new express interchanges on I-75, new access points and 39 bridges with lengths totaling about 27,500 linear ft. Factor in the tight working space and environmental sensitivity, and there is no doubt as to why it was named the No. 1 project on Roads & Bridges' 2018 Top 10 Roads list.
>
> ...
>
> Accelerated and complicated
>
> Accelerated bridge construction (ABC) was used throughout the new section, and the process paid for itself in two areas: Bridge 11 and Bridge 17.
>
> Bridge 11 is a six-span bridge over the existing I-75 southbound lanes, and was constructed with very tight horizontal and vertical geometric controls. This required the construction of a straddle bent over three lanes of I-75 traffic. To minimize disruptions, a two-stage straddle bent cap solution was executed. First, crews placed precast, post-tensioned inverted tee pier caps and put up formwork during overnight closures. Then they constructed the top portion of the cap, which was cast-in-place concrete. The precast straddle bents were placed by a 300-ton Liebherr LTM 1300-6.2 hydraulic crane.
>
> Bridge 17 is a 25-span I-75 express lane bridge located adjacent to and centered between Hope Creek and the existing southbound I-75 general-purpose lanes. Environmental credits had to be purchased for drilled shaft work in the creek bed area, and the joint venture had to work off the shoulder of the general-purpose lanes and execute top-down construction. Hammerhead pier caps were precast and also placed by a 300-ton Liebherr LTM 1300-6.2 hydraulic crane, which Folmar said was "a big win for us."
>
> The saddle bents and pier caps allowed the new bridges to take on a lower profile, which saved money and accelerated construction.

*See* https://www.roadsbridges.com/no-1-northwest-corridor-express-lanes.

52.     Similarly, the Precast Concrete Institute 2019 Design Award for "Best Bridge with Main Span More Than 150 Feet" explicitly highlights the Partially Precast Concrete Beam Technology, as shown in the following photos:












*See* https://www.pci.org/PCI/Project_Resources/Project_Profile/Project_Profile_Details.aspx?ID=220333; and https://youtu.be/zawNfjeeGcY.

53.   The 2019 PCI Design Award also highlights many of the obstacles associated with the NWC Tollway and credits the advantages that Defendants realized through use of Plaintiff LBH's Partially Precast Concrete Beam Technology:

## Project Overview

The Northwest Corridor Bridge project in Marietta, Ga., was in the planning stage for more than 15 years. The goal of the project, which was finally completed in 2018, was to add a managed-lane solution that would relieve congestion in this fast-growing metropolitan area and increase traffic capacity along a 29.7-mile corridor.

When the project was awarded in 2013, it was the first design-build-finance project procured by the Georgia Department of Transportation (GDOT), says Alan Kite, structure design lead. The project was led by a construction joint venture that financed up to 10% of the project's cost at GDOT's discretion.

Along with the budgetary issues, the job site faced many logistical obstacles, including horizontal and vertical restrictions, the need to protect sensitive natural environments, and a constant flow of traffic on the southbound interstate. "Minimizing impacts to the adjacent wetlands, utilities, and traffic while constructing piers was a major challenge on this project," Kite says.

...

### One project, 30 bridges

The project scope included 30 bridges, all constructed with precast concrete beams. The mainline viaduct bridges consist of prestressed concrete bulb-tee beams supported on single-column hammerhead piers, with bridge lengths ranging from 1250 to 5981 ft to span roads and railroads, highway on- and off-ramps, streams, and wetlands.

Prestressed concrete beams were used throughout the project, including bulb-tee or AASHTO beams on all secondary bridges. "Using precast concrete elements for pier construction allowed for a faster construction process, with most bridges going up over the course of a single night with only partial lane closures," says Timothy M. Williams, chief engineer with Archer-Western Contractors.

The successful delivery of this project demonstrates the benefits of a design-build delivery method that could transform the way Georgia approaches bridge project planning in the future. "Parsons, GDOT, and several other state and private agencies are working together as a team to ensure that the quality, schedule, and financial performance of this project set the bar for future design-build mega-projects both in this state and around the country," Kite says. "This project will improve safety and mobility for the entire interstate corridor."

*See* https://www.pci.org/PCI/Project_Resources/Project_Profile/Project_Profile_Details.aspx?ID=220333.

## THE ACCUSED BEAMS

54.     The Accused Beams include any concrete beams that utilize Plaintiff

LBH's Partially Precast Concrete Beam Technology, including any concrete beams

that infringe at least one claim of the '537 patent.  This includes, but is not limited

to, any partially precast inverted-T concrete beams, partially precast inverted-T

hammerhead concrete beams, partially precast inverted-T straddle bent concrete

beams, and any other partially precast inverted-T concrete beams utilized in the

NWC Tollway.

55.     The Aspire magazine article attached as Exhibit C notes, particularly,

that "geometric constraints and the presence of existing roadways" prompted

implementation of Accused Beams, which were constructed using precast concrete

members erected on columns using two 300-metric-ton mobile hydraulic cranes.

*See* Ex. C at p. 18.  The article explains that, to minimize traffic disruption, precast

concrete members were placed *in merely a few hours during a temporary nighttime

shutdown* from 11:00 p.m. to 4:00 a.m.  *Id*. (emphasis added).  Notably, in

describing construction of an Accused Beam, the article says that "the formwork

for the cast-in-place portion of the bent cap was then lifted and connected to the

precast concrete section."  *Id*.  It continued, "The *cast-in-place [fresh] concrete*

*was placed later* with protection measures in place *while traffic was maintained below*." *Id.* (emphasis added).

56.     A photograph of the precast structural concrete portion with reinforcing material extending above an Accused Beam in the NWC Tollway is included in the ASPIRE article as follows:



*Id.*

57.     And a photograph of a completed Accused Beam in the NWC Tollway is also included:



*Id*. at p. 19.

58.    The article further provides schematics for an Accused Beam used in the NWC Tollway:





*Id.*

59.     The Accused Beams constructed for the NWC Tollway are owned by

GDOT and/or SRTA.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,578,537)

60.     Plaintiff LBH incorporates paragraphs 1 through 59 herein by

reference.

61.     LBH is the assignee of the '537 patent, entitled "Partially

Prefabricated Structural Concrete Beam," with ownership of all substantial rights,

including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

62.     The '537 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

63.     Defendants Archer Western, Parsons, NWER, Hubbard, Heath & Lineback, GDOT, and SRTA have directly infringed and/or indirectly infringed, and continue to directly infringe and/or indirectly infringe, claims 1-7 of the '537 patent in this judicial district and elsewhere in the United States, without the consent or authorization of LBH or its members, by, among other things, making, using, offering for sale, and/or selling the Accused Beams.

64.     Defendants GDOT and/or SRTA directly infringed and/or indirectly infringed, and continue to directly infringe and/or indirectly infringe, claims 1-7 of the '537 patent in this judicial district and elsewhere in Georgia and the United States, without the consent or authorization of LBH or its members, by, among other things, their use of the Accused Beams, and/or the bridges and overpasses constructed with Accused Beams (e.g., the NWC Tollway), for revenue-generating infrastructure, whereby GDOT and/or SRTA charge customers (e.g., drivers who are charged tolls) for their use of the subject bridges and overpasses of the NWC Tollway.

65.     Specifically, each Accused Beam infringes claims 1-7 of the '537 patent as each Accused Beam comprises a precast structural concrete portion and a poured-in-place structural concrete portion that is at least ten percent (or more, depending on the claim at issue) of the total weight of the Accused Beam.  Each Accused Beam comprises reinforcing material extending from the precast structural concrete portion into the poured-in-place structural concrete portion. The poured-in-place structural concrete portion of each Accused Beam is constructed utilizing temporary formwork.  The precast structural concrete portion of each Accused Beam is sufficiently strong to support the moment load produced by the placement of fresh concrete of the poured-in-place portion and the self-weight of the precast structural concrete portion itself.  And each Accused Beam is an inverted-T beam.

66.     The infringement of the Accused Beams relative to the limitations of claims 1-7 of the '537 patent is also set forth in the infringement claim chart attached to this Complaint as Exhibit E.  LBH fully incorporates Exhibit E by reference.

67.     All Defendants have actual notice of the '537 patent by at least the date of service of this original Complaint.  Archer Western, Parsons, and NWER (via Archer Western) had actual notice of at least the subject matter and material

limitations of the claims of the '537 patent no later than July 15, 2013.  This includes actual notice of the published patent application (see Ex. B) and the fact that the claims of the '537 patent had been allowed and would issue in the near future.

68.    Defendants know (and have known) that their actions have, and continue to, actively induce direct infringements by others.

69.    Defendants Archer Western, Parsons, NWER, GDOT, and SRTA are liable for indirect infringement of the '537 patent because they induced, and continue to induce, direct infringements of the '537 patent by customers (e.g., drivers who are charged tolls) who use the Accused Beams and/or the bridges and overpasses comprising the Accused Beams (e.g., the NWC Tollway).  Defendants Archer Western, Parsons, NWER, GDOT, and SRTA knowingly induced, and continue to induce, these infringing acts with the specific intent of encouraging such infringements by the customers.  Indeed, the singular purpose for constructing the Accused Beams was, and is, to encourage such customers to use the Accused Beams and/or the bridges and overpasses comprising the Accused Beams (e.g., the NWC Tollway).  The Accused Beams and/or the bridges and overpasses comprising the Accused Beams (e.g., the NWC Tollway) are openly and publicly

accessible to all customers who pay a price for access, and such accessibility is openly and publicly advertised and encouraged.

70.    Defendants Archer Western, Parsons, and NWER are liable for indirect infringement of the '537 patent because they induced, and continue to induce, direct infringement of the '537 patent by GDOT and/or SRTA through GDOT's and/or SRTA's use of the Accused Beams and/or the bridges and overpasses comprising the Accused Beams (e.g., the NWC Tollway) for their regional, publicly-accessible, revenue-generating infrastructure.  Defendants Archer Western, Parsons, and NWER knowingly induced, and continue to induce, these infringing acts with the specific intent of encouraging such infringements by GDOT and/or SRTA, where Archer Western, Parsons, and NWER knew that GDOT and/or SRTA would use the Accused Beams and/or the bridges and overpasses comprising the Accused Beams (e.g., the NWC Tollway) for such critical infrastructure.

71.    Defendants Archer Western, Parsons, and NWER are liable for indirect infringement of the '537 patent because they induced, and continue to induce, direct infringements of the '537 patent by GDOT and/or SRTA who offer to sell and sell to their customers (e.g., drivers who are charged tolls) access to the bridges and overpasses of the NWC Tollway, which are comprised of Accused

Beams.  Defendants Archer Western, Parsons, and NWER knowingly induced, and continue to induce, these infringing acts with the specific intent of encouraging such infringements by GDOT and/or SRTA, where Archer Western, Parsons, and NWER knew that GDOT and/or SRTA would offer to sell, and sell, the aforementioned tollway services, and that such was both (i) the impetus for GDOT and/or SRTA to engage the NWC Tollway Parties to construct the NWC Tollway and (ii) the ultimate mechanism by which GDOT and/or SRTA would monetize the NWC Tollway Project.

72.    All Defendants have made, used, offered for sale, and/or sold, and continue to make, use, offer for sale, and/or sell, the Accused Beams, as particularly described in this Count, pursuant to one or more contractual agreements between and/or among them, at least as to the NWC Tollway. Accordingly, Defendants are jointly, severally, and/or alternatively liable for the various infringements described in this Count.

73.    Plaintiff LBH has been damaged as a result of Defendants' infringing conduct described in this Count.  Defendants are, thus, liable to LBH in an amount that adequately compensates it for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under both 35 U.S.C § 154(d) and 35 U.S.C. § 284.

## JOINDER OF PARTIES

74.    LBH incorporates paragraphs 1 through 73 herein by reference.

75.    Defendants Archer Western, Parsons, NWER, Hubbard, Heath & Lineback, GDOT, and SRTA have each made, had made, used, offered to sell, and/or sold the Accused Beams and attendant services, at least for the NWC Tollway.  Indeed, all Defendants have made, used, offered for sale, and/or sold, and continue to make, use, offer for sale, and/or sell, the Accused Beams, as particularly described in Count I herein, pursuant to one or more contractual agreements between and/or among them, at least as to the NWC Tollway.

76.    Moreover, the alleged infringements of the '537 patent set forth in Count I arise out of the same transaction, occurrence, or series of transactions or occurrences, relating to the making, using, offering for sale, and selling of the Accused Beams and attendant services, at least with respect to the NWC Tollway.

77.    For these reasons, questions of fact common to all Defendants will arise in this lawsuit including, for example, as to Defendants' patent infringement by, or through, the making, using, offering for sale, and selling of the Accused Beams and related services.  This makes joinder of Archer Western, Parsons, NWER, Hubbard, Heath & Lineback, GDOT, and SRTA in this lawsuit proper in accordance with 35 U.S.C. § 299(a).

## **WILLFULNESS**

78.     LBH incorporates paragraphs 1 through 77 herein by reference.

79.     Prior to the filing of the original Complaint, Defendants Archer Western, Parsons, and NWER (via Archer Western) knew or should have known of the '537 patent, and knew or should have known that they infringed the '537 patent's claims.  Indeed, at a minimum, they exercised willful blindness to the existence of the '537 patent and took deliberately wrongful steps to ignore infringement of the '537 patent when usurping LBH's Partially Precast Concrete Beam Technology.

80.     In particular, Archer Western, Parsons, and NWER (via Archer Western) have had knowledge of the explicit subject matter and limitations of the claims of the '537 patent and the Partially Precast Concrete Beam Technology since at least July 15, 2013.  Their knowledge includes detailed information about the Partially Precast Concrete Beam Technology provided them by Mr. Browne and/or Mr. Head in numerous discussions, and also includes information contained in The Border Highway West Presentation, which identified on the first slide what would soon become the '537 patent by its U.S. Publication Number and made clear that the patent claims had been allowed by the Patent Office.

81.     Despite having such knowledge, as well as knowledge that they are directly and/or indirectly infringing claims of the '537 patent, Archer Western, Parsons, and NWER (via Archer Western) have nevertheless proceeded to infringe the '537 patent, and induce others to do the same, with full and complete knowledge of the applicability of the '537 patent and the Partially Precast Concrete Beam Technology to the Accused Beams, without a license and without a good faith belief that the claims of the '537 patent are not infringed.  As noted above, this includes, but is not limited to, the collective willful blindness of Archer Western, Parsons, and NWER, including their singular and collective refusal to investigate whether the Accused Beams infringe the asserted claims of the '537 patent.

82.     For at least these reasons, Archer Western, Parsons, and NWER's infringing activities detailed in this Complaint have been, and continue to be, willful, egregious, wanton, and deliberately in disregard of LBH's rights, justifying enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **JURY DEMAND**

LBH hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

Plaintiff LBH requests that the Court find in its favor and against Defendants, and that the Court grant LBH the following relief:

a.  Judgment that one or more claims of the '537 patent have been directly and/or indirectly infringed, either literally and/or under the doctrine of equivalents, by one or more Defendants and/or by others whose infringements have been induced by one or more Defendants;

b.  Judgment that Defendants account for and pay to LBH all damages to, and costs incurred by, LBH because of Defendants' infringing activities and other conduct complained of herein;

c.  Judgment that Defendants account for and pay to LBH a reasonable, ongoing, post-judgment royalty because of Defendants' infringing activities and other conduct complained of herein;

d.  That Archer Western, Parsons, and NWER's direct and indirect infringements relative to the '537 patent be found willful from the time that Defendants became aware of the infringing nature of their products and services, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Judgment that Archer Western, Parsons, and NWER's direct and indirect infringements relative to the '537 patent, and related conduct, constitute an exceptional case pursuant to 35 U.S.C. § 285 and that Archer Western, Parsons, and NWER are, therefore, liable for LBH's attorneys' fees and costs in prosecuting this action;

f.  That LBH be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

g.  That LBH be granted such other and further relief, including equitable and/or injunctive relief, as the Court may deem just and proper under the circumstances.

**Dated:  October 4, 2019**

Respectfully submitted,

*/s/ Edward R. Nelson III*
Edward R. Nelson III (*Pro Hac Vice to be filed*)
Texas Bar No. 00797142
John Murphy (*Pro Hac Vice to be filed*)
Texas Bar No. 24056024
Christopher G. Granaghan (*Pro Hac Vice to be filed*)
Texas Bar No. 24078585

Brian P. Herrmann (*Pro Hac Vice to be filed*)
Texas Bar No. 24083174
ed@nbafirm.com
murphy@nbafirm.com
chris@nbafirm.com
brian@nbafirm.com
NELSON BUMGARDNER ALBRITTON P.C.
3131 West Seventh Street, Suite 300
Fort Worth, Texas 76107
Telephone: (817) 377-9111


*/s/ Preston H. Heard*
Preston H. Heard *(Designated Local Counsel)*
Georgia Bar No. 476319
Preston.Heard@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW
Suite 2400
Atlanta, Georgia 30363-1017
Telephone: (404) 872-7000

**ATTORNEYS FOR LBH ENGINEERS, LLC**